IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2017

## STATE OF TENNESSEE v. DAMARKO[1] D. CLAY

**Appeal from the Circuit Court for Madison County**
**No. 16-108          Donald H. Allen, Judge**

_____

### No. W2017-00185-CCA-R3-CD

_____

The Defendant, Damarko D. Clay, appeals as of right from his convictions for possession of marijuana with intent to sell, possession of marijuana with intent to deliver, possession of drug paraphernalia, possession of a firearm during the commission of a dangerous felony, and being a convicted felon in possession of a firearm. The Defendant argues that there was insufficient evidence to support his convictions. Following our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee (on appeal); and Harold E. Dorsey (at trial), Alamo, Tennessee, for the appellant, Damarko D. Clay.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; JerryWoodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

_____
[1] We note that the briefs, transcript of the evidence, and cover sheet for the technical record in this case spell the Defendant's first name as "Demarko." However, the Defendant's name appears as "Damarko D. Clay" on the indictment and judgments. As is the policy of this court, we will use the spelling from the indictment.

On February 29, 2016, the Madison County Grand Jury indicted the Defendant with one count each of possession of marijuana with intent to sell, possession of marijuana with intent to deliver, and possession of drug paraphernalia. See Tenn. Code Ann. §§ 39-17-417, -425. As part of the same indictment, the grand jury also charged the Defendant with two counts each of possession of a firearm during the commission of a dangerous felony and being a convicted felon in possession of a firearm. See Tenn. Code Ann. § 39-17-1324. This case proceeded to trial on September 20, 2016.

Tennessee Highway Patrol Trooper Adam Cash testified that he was assigned to Madison County and that he was working on June 19, 2015. He said that he conducted a traffic stop "on Old Hickory Boulevard in Madison County, in Jackson[,]" explaining that he observed a Jeep Liberty "going over the posted speed limit." Using radar, he "estimated the speed to be 42 miles per hour in a 30 mile per hour zone." Trooper Cash "activated [his] lights and pulled [the Defendant] over" on Hollywood Drive. Trooper Cash explained,

> I walked up to the driver's side window on the driver's side and noticed that there were three occupants in the vehicle and all of . . . the windows where [the occupants] were seated were rolled down, which [was] odd for the time of year it [was]. You know, normally people would not have the windows open when it's hot in the middle of the summer and with the AC on.

Trooper Cash determined that the driver was a man named Eric Coman, the man in the front passenger seat was the Defendant, and the backseat passenger was Michael Roberson. He explained that none of the three men had identifying information, so he conducted computer searches on each individual using "several databases." Trooper Cash testified that he intended to write the driver a ticket for speeding, for failing to yield to the right to an emergency vehicle, and for not having his driver's license.

Trooper Cash explained that he detected "some criminal indicators, some clues or indicators that might, you know, point to some kind of criminal activity being afoot, which kind of raised my suspicions[.]" Trooper Cash said that he called for "assistance from other officers" and "called for a K9." He said that Officer Devon Bray from the Jackson Police Department (JPD) arrived at the scene with the requested dog. Trooper Cash said that in order for Officer Bray to conduct the canine search, the three men needed to exit the vehicle. Officer Cash stated that he ordered the occupants of the vehicle multiple times before they "compl[ied] with [his] commands."

-2-

Trooper Cash testified that the Defendant refused to exit the vehicle and said that he "had to call his attorney." As the Defendant said this, "he pulled his phone out of his pocket," and as he pulled "the phone out of his pocket, . . . a clear plastic bag of marijuana fell out with it in plain sight[.]" Officer Bray "order[ed] [the Defendant] out of the vehicle and . . . place[d] him in custody." Trooper Cash testified that he walked around to the passenger side of the vehicle and observed a "small plastic bag of marijuana" that "had fallen onto the carpet" of the car. He also saw a "clear," "medium-sized" jar with "a large amount of marijuana in it."

Trooper Cash said that he and Officer Bray continued to search the vehicle and discovered "a blue drawstring bag" under the Defendant's seat. He opened the bag and "[t]here was a Glock 27 40-caliber handgun in there, which had a high capacity 22-round magazine inserted in it; one round in the chamber and 22 rounds in the magazine itself." Trooper Cash said that there was "a drum magazine" inside the bag, which "held 50 rounds of ammunition[,]" as well as "a box of sandwich bags[.]" Trooper Cash explained that these items were "immediately accessible to [the Defendant], just where he could just reach down with little to no effort and pick [them] up." Also, Trooper Cash testified that he found "digital scales . . . in the pocket of [the Defendant's] pants." Trooper Cash further explained that he found a total of $178.00 "in various denominations" in the Defendant's pants pocket.

At trial, Trooper Cash identified the bag of marijuana, the glass jar of marijuana, the plastic bags, and digital scales. These items were entered into evidence. Trooper Cash also identified the blue drawstring bag found under the front-passenger seat, which contained "the 40-caliber handgun, 40-caliber rounds, [and] 40-caliber magazines[,]" and these items were entered into evidence.

Trooper Cash testified that the car was registered to the Defendant's sister, who was not present during the traffic stop. Trooper Cash said that he attempted to contact her, but he was unsuccessful. Trooper Cash also explained that he ran "background checks" on all three occupants of the vehicle and confirmed that the Defendant had a prior felony conviction. Trooper Cash then identified a judgment from the "Madison County Circuit Court" regarding the Defendant and his conviction of "possession of marijuana with intent to sell . . . with a sentence imposed on September 15[], 2014." The judgment was entered into evidence.

Trooper Cash said that none of the three men claimed ownership of the items located in the vehicle and that all three were initially charged with the crimes.

Trooper Cash identified an audio and video recording of the incident that was taken from the dashboard camera of his vehicle. The recording was entered into

evidence, and a segment of the recording was played for the jury. Trooper Cash testified that the traffic stop and collection of evidence as seen in the recording were accurate depictions of the stop he conducted.

Peter Hall testified that he was a "Special Agent Forensic Scientist with the Tennessee Bureau of Investigation." He explained that his primary job duties included testing "evidence for the presence of controlled substances and then report[ing] [his] findings." Testifying as an "expert in the field of drug analysis and controlled substance testing[,]" Agent Hall said that in regards to the Defendant's case, he determined that the evidence submitted to him for analysis was marijuana. The prosecutor showed Agent Hall items previously marked as exhibits, and Agent Hall identified these items as the substances he tested and determined to be marijuana. He explained that he weighed the marijuana found at the scene and that it totaled 102.21 grams. Agent Hall identified his original lab report regarding the evidence in the Defendant's case, and it was admitted into evidence.

Officer Bray testified that he was a "dog handler" and "had a dual purpose K9" that "track[ed] and f[ound] articles, f[ound] people that [were] hiding from [the police], and also locate[d] and f[ound] drugs for" the police. Officer Bray remembered Trooper Cash's calling him to assist with a traffic stop at approximately midnight on June 19, 2015. He explained that Trooper Cash wanted him "to do an external sniff with [his] dog." Officer Bray testified that he informed Trooper Cash that all of the occupants of the vehicle would need to exit before he could "do an exterior K9 sniff of the vehicle[.]" Before the Defendant had exited the vehicle, Officer Bray observed the Defendant pull a cell phone out of his pocket, and when he did this, a "small bag of marijuana" fell out of his pocket. Officer Bray testified that he "explained to [the Defendant that] he was under arrest and told him to exit the vehicle." Officer Bray "pulled [the Defendant] out of the vehicle" and "placed [the Defendant] in handcuffs with [the] assistance of a couple of other officers that were on the scene." Officer Bray explained that he did not retrieve the marijuana but that he informed Trooper Cash about his observations and that Trooper Cash collected all of the evidence. Officer Bray identified the Defendant as the man in the front passenger seat of the vehicle during the stop.

Eric Coman, one of the co-defendants in this case, testified that he was the "driver of a Jeep Liberty" on the night of June 19, 2015. He explained that he was pulled over by the Tennessee Highway Patrol and subsequently arrested. Mr. Coman testified that he was friends with the Defendant and Mr. Roberson and that they were riding in the Jeep when police stopped the vehicle. Mr. Coman testified that he had borrowed the Jeep from a friend, "Tania[,]" who picked him up at his house. Tania then drove Mr. Coman, who was sitting in the front passenger seat to a house to pick up the Defendant. Mr. Coman explained that they picked up the Defendant and that the Defendant sat in the

-4-

back. After Tania "drove to her destination[,]" Mr. Coman drove the Jeep and the Defendant moved from the back seat to the front passenger seat. He testified that the Defendant remained in the front passenger seat until the stop.

Mr. Coman testified that when the officer asked to search the vehicle, he declined to give him permission to do so because he had borrowed the vehicle. Mr. Coman asserted that the gun found on the floor under the driver's seat belonged to him. Mr. Coman also stated that it was a gun that he had with him that night and that he "was the one who pushed it" under the seat. Mr. Coman testified that aside from the "eight [or] nine grams" of drugs in his pocket, none of the drugs found in the vehicle that night belonged to him. Mr. Coman said that the drugs were in his pocket before he got into the Jeep. When shown exhibits of the glass jar and the plastic bag containing marijuana, Mr. Coman denied knowing that those items were located in the Jeep. He also denied knowing that there was a gun under the front passenger seat until after the "officers pulled it out" of the vehicle that night.

The Defendant testified that he had been riding in a vehicle with Mr. Coman and Mr. Roberson on June 19, 2015, when Officer Cash stopped the vehicle. The Defendant explained that Mr. Roberson and Mr. Coman "picked [him] up" at his mother's house and that he had been riding in the vehicle for approximately "[forty] to [fifty] minutes" before the stop. The Defendant admitted to having marijuana with him when he got into the car and explained that he had "a little bit over a[n] ounce and a half, two ounces of regular weed, . . . and a few grams of . . . kush[,]" which "was in a jar." The Defendant explained that all of the marijuana was initially located "inside [his] pants[,]" but then he placed the jar on "the floorboard by [his] seat[.]" The Defendant denied having any firearms with him. When asked if the bag found inside the Jeep belonged to him, he replied, "I still don't have a clue to what the purple bag actually looked like to this day." The Defendant also asserted that he "had no clue" about the plastic bags found inside the purple bag.

On cross-examination, the Defendant admitted to having digital scales in his pocket. He said, "[T]o be honest, yes, it was to weigh marijuana[,]" yet asserted, "[I]t was for me to weigh marijuana to make sure what I paid for, I got, you know?" The Defendant explained that the cash found in his pocket was "from a paycheck" from his job at Burger King and from "gift money for Father's Day." He agreed that he had "the scale and money in one pocket" and his "phone and marijuana in another pocket" but denied that the money had anything to do with the drugs. The Defendant further explained that had he known there were guns in the vehicle, he "wouldn't have got[ten] in the car" "[b]ecause [he was] a convicted felon."

-5-

At the conclusion of the trial, the jury found the Defendant guilty as charged. Following a sentencing hearing, the trial court merged Counts 1 and 2, possession with intent to sell and possession with intent to deliver into one conviction, and ordered two years' incarceration. The Defendant received a sentence of eleven months and twenty-nine days' incarceration for Count 3, possession of drug paraphernalia. The trial court merged Counts 4 and 5, two counts of possessing a firearm during the commission of a dangerous felony into one conviction, and imposed a sentence of four years' incarceration. The trial court also merged Counts 6 and 7, two counts of being a felon in possession of a firearm, and imposed a sentence of five years' incarceration. The trial court ordered Counts 1, 2, and 3 to be served concurrently and Counts 4, 5, 6, and 7 to run concurrently to each other but consecutively to Counts 1, 2, and 3, for a total effective sentence of seven years' incarceration in the Tennessee Department of Correction. The Defendant filed a timely appeal with this court.

ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his convictions for "the offenses of marijuana with the intent to sell/deliver and possession of a firearm during the commission of or attempt to commit possession of marijuana with the intent to sell/deliver."[2] Specifically, the Defendant argues that the marijuana found in this case "was for person[al] use" and this "fact . . . was not disputed." Regarding the firearm offenses, the Defendant argues "that the evidence established the firearm was not located on his person[] but under the passenger seat." The Defendant futher argues that "Mr. Coman testified under oath that one of the firearms belonged to him[.]" The State responds that there was sufficient evidence to sustain the Defendant's convictions. We agree with the State.

An appellate court's standard of review when the Defendant questions the sufficieny of the evidence on appeal is "whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

---

[2] We note that the Defendant does not challenge his convictions for possession of drug paraphernalia or being a felon in possession of a firearm.

-6-

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id., State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

"Direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The reason for this is because with both direct and circumstantial evidence, "'a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference . . . [and] [i]f the jury is convinced beyond a reasonable doubt, we can require no more.'" Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

### I. Drug Offenses

As relevant here, "[i]t is an offense for a defendant to knowingly" "[d]eliver a controlled substance[,]" "[s]ell a controlled substance[,]" or "[p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(2)-(4). Marijuana is a Schedule VI controlled substance. See Tenn. Code Ann. § 39-17-415(a)(1). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419. "Items such as scales, baggies, and weapons in the vicinity of narcotics and/or a defendant have been among those objects found appropriate for consideration in these circumstances." State v. Philip Francis Morales, No. E2001-01768-CCA-R3-CD, 2003 WL 21297308, at *8 (Tenn. Crim. App. June 5, 2003) (collecting cases).

Here, the evidence was sufficient to support the Defendant's convictions for possession with intent to sell and possession with intent to deliver. The Defendant admitted that the marijuana and the scales found during the incident belonged to him. Though he claimed the marijuana was simply for his personal use, it was reasonable for the jury to infer that he intended to sell and deliver the drugs. The officers found scales, baggies, a loaded gun, and ammunition "in the vicinity of narcotics" and the Defendant. See Morales, 2003 WL 21297308, at *8. Moreover, the amount of marijuana collected from the vehicle totalled over 100 grams. Thus, there was sufficient evidence to support

the Defendant's convictions for possession with intent to sell and possession with intent to deliver.

## *II. Firearm Offenses*

"It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." Tenn. Code Ann. § 39-17-1324(a). A "dangerous felony" includes "[a] felony involving the sale, . . . distribution or possession with intet to sell, . . . or distribute a controlled substance[.]" Tenn. Code Ann. § 39-17-1324(i)(1)(L).

"Tennessee courts recognize that 'possession' may be either actual or constructive." State v. Ronnie Paul Trusty, No. W2012-02445-CCA-R3-CD, 2013 WL 3488150, at *4 (Tenn. Crim. App. July 11, 2013) (quoting State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)) (internal quotation marks omitted). Constructive possession exists when a person has "the power and intention at a given time to exercise dominion and control over [the item] either directly or through others." Id. (quoting Shaw, 37 S.W.3d at 903).

It appears from the record that the State charged the two firearm offenses as alternative charges relating solely to the Glock found under the passenger seat. Here, it was clear that the Defendant had the ability to "exercise dominion and control" over the Glock. See Trusty, 2013 WL 3488150 at *4. Though the Defendant claims that he was unaware of the gun in the blue or purple bag, it was located under his seat in close proximity to the jar of marijuana and his feet. It was reasonable for the jury to infer that the gun belonged to the Defendant. Moreover, the fact that the gun under the passenger seat was loaded and "within the close immediate proximity of the contraband established the [D]efendant's intent to go armed and demonstrated a nexus between the firearm and the drugs." Id. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's convictions for possession of a firearm with intent to go armed during the commission of a dangerous felony.

## CONCLUSION

Based upon consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE